**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**DENA L. PARSONS,**

      **Plaintiff,**

**vs.**                                      **CASE NO. 5:04CV284-SPM/AK**

**JO ANNE B. BARNHART,
Commissioner of Social Security**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on June 25, 2001, alleging a disability onset date of May 10, 2000, because of hepatitis C, arthritis, depression, and anxiety.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted hearings on April 9, 2003, and April 22, 2004, and entered an unfavorable decision on July 2, 2004.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff has a history of hepatitis C, reflux disease, and back pain associated with arthritis, and that these are severe impairments within the meaning of the Act, but that they do not meet any of the Listings of Impairments.  (R. 17).  He also found that Plaintiff has depression and anxiety, but that these are not severe in that they impose no job limitations.  The ALJ based his findings about Plaintiff's mental limitations on the fact that she sought no mental health treatment, and several doctors had found no limitations, including Dr. Tyll, who found her to be malingering and to have her mental problems controlled by medication.  (R. 18).  The ALJ also assessed her allegations of pain and found her not fully credible.  Her back condition is confirmed by MRI, which showed only a mild disk bulge, and the examinations of Dr. Zawahry and Jacobs found only tenderness, and normal movement upon examination.  The treatment notes of Dr. Zawahry as to her physical problems do not support his functional assessment that she can sit only 2 hours a day and is unable to stand or walk at all during an 8 hour work day.  (R. 19).  The ALJ also rejects Dr. Zawahry's opinions about the limitations caused by hepatitis C since objective tests show no detectable

virus and Drs. Curry and Rao found that any symptoms Plaintiff may have had were resolved.  (R. 19).  The ALJ accepted the functional assessments of Dr. Jacob and the state agency medical consultants, who found Plaintiff capable of light work.  Since Plaintiff's past relevant work as a waitress, nurse's aide, and telemarketer were light jobs, she can perform her past relevant work.  (R. 19).  The ALJ also found that even if she were not able to perform her past relevant work, she would not be disabled under the Medical-Vocational Guidelines, and there were a number of jobs in the national economy which she could perform since she can perform a full range of light work.  (R. 20-21).

## C.    ISSUES PRESENTED

Plaintiff argues that the ALJ did not apply nor reference the accepted pain standard in the Eleventh Circuit when considering its effects on her ability to perform her past relevant work; the ALJ failed to accord the proper weight to the opinions of her treating physicians, particularly Dr. Zawahry, who found her unable to work because of her hepatitis C.

The government responds that the ALJ relied on a number of factors to determine that her allegations of pain were not credible, including infrequent and inconsistent treatment, reports of exaggerated symptomology and malingering, and evidence in her treatment notes that medication relieved it.  The ALJ found contrary evidence in the record to Dr. Zawahry's extreme functional limitations and conclusory statement on disability, specifically that of Dr. Rao, whom Dr. Zawahry referred Plaintiff

to for treatment of her hepatitis C, and who found no active virus at the same time Dr. Zawahry found her to be disabled from it.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d

227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the
Commissioner's findings of fact, his conclusions of law are not presumed valid. <u>Martin v.
Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's
failure to apply correct legal standards or to provide the reviewing court with an
adequate basis for it to determine whether proper legal principles have been observed
requires reversal.  <u>Id.</u> (citations omitted).

    A disability is defined as an "inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To
qualify as a disability the physical or mental impairment must be so severe that claimant
is not only unable to do his previous work, "but cannot, considering his age, education,
and work experience, engage in any other kind of substantial gainful work which exists
in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

    Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in
five steps:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those
      listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant
      work?

5.    Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.    SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Dr. Zawahry treated Plaintiff from July 16, 2001, to January 15, 2002, for back pain and discovered by lab tests that she had hepatitis C.  (R. 203-206).  He referred her to specialists for treatment of hepatitis C.

Dr. Rao examined Plaintiff at Dr. Zawahry's request and opined "that she had hepatitis C exposure and currently does not have a detectable virus and has normal liver enzymes suggestive that she is one of the rare patients who produced antibodies and eradicated the virus or she has such low viral load that it is not causing her any problems."  (R. 174).  He suggested yearly testing, but no other treatment.  (R. 176).

Other doctors and more tests confirmed this finding.  Lab tests for hepatitis C taken on February 25, 2000, showed "insufficient" virus undetectable, although a hepatitis profile was positive for C.  (R. 108- 115).  Dr. Tumiel explains that she has hepatitis of "unknown etiology" and that her "hepatitis RNA by PCR qualitative was within normal limits."  (R. 118).

Records from Dr. Timothy Curry date from March 31, 1997 through September 15, 2000, and show treatment for hepatitis C.  (R. 128-148).  He indicates that the tests for hepatitis were inconclusive, but "[a]t any rate, at this point, it appears that the hepatitis is resolving."  (R. 142-144).  Dr. Curry also treated her for depression, by her own report, with Zoloft following an encounter with her ex-husband.  (R. 135).  Two months later she reported feeling "back to normal," with a lot of energy and normal appetite.  (R. 134).

Objective tests in the record (an MRI) regarding her back complaints show mild disk bulge and mild degenerative changes.  (R. 230).  A number of tests were conducted on her back, including bone scan, EMG, and nerve conduction studies, which were normal.  R.257-268).  The only evidence regarding her knee complaints are records showing that she dislocated her knee in June 1997, and wore a cast for six weeks.  (R. 90-91).

Despite these findings, Dr. Zawahry completed a physical capacities evaluation on March 26, 2003, and found her to be extremely limited: able to sit only 2 hours out of an 8 hour day, with no walking or standing; lifting only up to 10 pounds; never carrying over 11 pounds; with some moderate environmental restrictions.  (R. 229).  He had

previously written a letter on July 26, 2001, stating that Plaintiff was totally and permanently disabled because of hepatitis C, "which is causing her progressive and persistent weakness, lethargy, and shortness of breath."  (R. 206).

However, other physical capacity assessments indicate no such problems.  A Physical Residual Functional Capacity Assessment completed by a state agency physician on January 25, 2002, found her able to lift up to 50 pounds, 25 pounds frequently, and able to sit, stand and walk six hours out of an 8 hour day.  (R. 222).  He noted that with no evidence of active disease (hepatitis), there was no evidence to support fatigue and weakness.  (R. 226).

A consultative examination by Dr. Jacob on June 17, 2003, for her allegations of severe back pain found her to have normal gait and movement, no muscle spasms, normal range of movement with no sensory or motor deficit.  He observed no psychotic or neurotic signs in her.  (R. 245-247).  His work related activities assessment found her capable of lifting 20 pounds occasionally; 10 pounds frequently; standing or walking six hours out of an 8 hour day and unlimited in her ability to sit; unlimited upper arm movements; no environmental limitations; and occasional postural limitations because of her back complaints.  (R. 248-251).

A consultative psychological evaluation was conducted by Dr. Mary Tyll on August 6, 2003.  (R. 252-254).  Plaintiff told Dr. Tyll she was there because she has hepatitis C.  (R. 252).  According to test scores on the MMPI, Plaintiff was exaggerating her pathology, faking, or malingering since she did not exhibit a consistent pattern of psychopathology.  (R. 253).  Validity indicators also suggested malingering.  (R. 253).

Case 5:04-cv-00284-SPM-AK   Document 25   Filed 03/02/06   Page 9 of 15

Page 9 of 15

Because of these factors, the test scores were considered invalid and another
evaluation was suggested at which time she could be confronted with the present test
findings.  Her hepatitis C was considered in remission based on medical evidence
reviewed by Dr. Tyll, and there was no MRI evidence of back problems beyond a mild
disk bulge and mild degenerative changes.  (R. 254).  Dr. Tyll also completed a work
related activities assessment and found her to have no mental limitations, with only
slight to moderate limitations in her ability to deal with others based on her overly
emotional reaction to being late for her appointment.  (R. 255-256).

Another psychological examination by Dr. James Hord found her to be not
significantly limited in most areas with mild to moderate memory problems and difficulty
with complex tasks.  (R. 179-185).  A Psychiatric Review Form assessed her with
anxiety related disorder and dysthymia, not severe, and able to perform simple routine
tasks on a sustained basis.  (R.  186-198).  Another Psychiatric Review Form dated
January 22, 2002, and completed by Dr. Wayne Conger, also found her to have
dysthymic disorder and anxiety related disorders, which are not severe and do not
significantly limit her activities.  (R. 207-219).

**F.**   **SUMMARY OF THE ADMINISTRATIVE HEARING**

A hearing was initially scheduled for April 9, 2003, but it was decided to continue
it until after several consultative examinations could be obtained.  (R. 269-272).  Plaintiff
appeared again on April 22, 2004, with her attorney and testified that she went to the
11th grade, did not obtain her GED, and last worked about three years ago.  (R. 277).
Her last job was as a waitress, and she was fired because they found out she had

hepatitis C.  (R. 277-278).  She testified that if she had not gotten hepatitis C she would still be working there because she made very good money.  (R. 280).  She has no idea how she got this disease, it was discovered when she was being treated for sinusitis and the doctor noticed that her eyes were very yellow, so he had her tested.  (R. 280). She takes no medicine, but she and Dr. Zawahry are looking for a doctor who will take Medicaid so she can get started.  (R. 280).  She says the hepatitis makes her stay tired all the time.  (R. 281).  She says that Dr. Zawahry gives her pain medication for her knees, which are "really, really messed up," and her back.  (R. 283).  He authorized tests on her knees and back and she had a dye test which showed she was "ate up with arthritis."  (R. 284).  Both her knees and back swell up after she walks a lot.  (R. 284-285).  She is getting ready to take Interferon for the hepatitis C, which has been delayed because Dr. Tamara (phonetic) is mean and told her mother she was an "IV drug-using whore."  (R. 287).  When asked further about this physician, she identified him as Dr. Rao, and she said he was going to start treating her.  (R. 289).  She suffers from nausea and vomiting, and has lost 25 pounds, which she attributes to the hepatitis C. (R. 289).  She also has hives and itches from the hepatitis which causes her liver to swell.  (R. 294).  Plaintiff claims that Dr. Zawahry has told her when her liver swells it will make her itch.  (R. 294).

The ALJ confronted her about her earnings record which shows she has not made $20,000 in her whole life.  (R. 296).  She claims not all of her tips were reported, some of the work was seasonal, and her husband forbade her to work when she was married, but the marriage ended in 1996.  (R. 295-298).  When the ALJ confronted her

about the report she was a malingerer and exaggerated her symptoms, she and her

attorney referred him to her treating physician's letter, but the ALJ said his letter was

written two years before two other doctors found nothing wrong with her, and the

hearing was concluded.  (R. 300).

## G.    DISCUSSION

### a)    Pain Standard and Plaintiff's credibility

Plaintiff claims that the ALJ erred by not referencing the Eleventh Circuit pain

standard and by failing to apply it to her ability to perform her past relevant work.  The

Eleventh Circuit has held that it is not necessary for the ALJ to cite to any particular

case to support his application of the relevant pain standard if he applies the standard

set forth in the regulations.  Hennes v. Commissioner, 130 Fed. Appx.  343 (11th Cir.

2005).  Pain and other subjective symptoms are treated by the regulations as symptoms

of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not

find disability based on symptoms, including pain alone, "unless medical signs or

findings show that there is a medical condition that could be reasonably expected to

produce these symptoms."  Accord 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d

1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there
> must be objective medical evidence to confirm the severity of the alleged
> pain arising from the condition or (2) the objectively determined medical
> condition must be of a severity which can reasonably be expected to give
> rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Elam v. Railroad Retirement

Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th

Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).
"While both the regulations and the Hand standard require objective medical evidence
of a condition that could reasonably be expected to cause the pain alleged, neither
requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held
that "[p]ain alone can be disabling, even when its existence is unsupported by objective
evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v.
Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's
testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d
1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of
pain, he must articulate explicit and adequate reasons, and these reasons must be
based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).
The failure to articulate adequate reasons for discrediting pain testimony mandates that
the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d
1541, 1545 (11th Cir. 1988).

In the case at hand, the ALJ articulated a number of compelling reasons why he
rejected Plaintiff's allegations of pain and cast doubt upon her credibility, not the least of
which is evidence of exaggeration, malingering, and faking documented by tests
designed to capture just such behavior.  The MMPI has a number of indices to indicate
whether someone is faking and whether the validity of their self reports can be relied
upon and Plaintiff's scores indicated that she was attempting to present herself as
seriously pathological, and she was prone to present herself as sick and in need of
emergency care when she was not.  (R. 253).  This test and these results are strongly
supportive of the ALJ's findings that her allegations of pain and limitation were not
entirely credible.

Further, the medical conditions she complains of, back pain and hepatitis C, and
the pain and limitations she claims to suffer from these conditions is not supported by
objective tests which showed only minimal problems in her back and a near total
resolution of the hepatitis.  In fact, Dr. Rao found it possible that Plaintiff was one of the
rare persons who had developed an antibody to the virus and actually diminished its

presence and its effect on her system.  Despite Plaintiff's testimony at the hearing of ongoing or future treatment plans for hepatitis, there is nothing in Dr. Zawahry's notes or any additional records from Dr. Rao to indicate that there had been any change in the disease or any plans to treat it.  Yet, at the hearing Plaintiff complained that she continued to suffer from the effects of this disease, including severe and disabling fatigue and a mysterious liver swelling that caused hives.  Actually, her liver studies were normal, which was one of the reasons Dr. Rao believed her condition to be resolved.  Drs. Curry and Tumiel agreed.  Thus, there is no support for Plaintiff's continued claims of severe limitation from a disease that was virtually "healed."

Also, Plaintiff claims that she cannot walk or stand because her knees are "really, really bad," but the only medical evidence of this condition is treatment for a twisted knee in 1997.

Finally, an ALJ may properly discount a disability claimant's credibility when there are scant earnings and significant breaks in employment.  Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996).        As the ALJ noted at the hearing, Plaintiff has not had consistent full time earnings during her entire work history, and she could not adequately explain this in conjunction with her testimony at the hearing that she had worked hard and made good money prior to being diagnosed with hepatitis C.  (R. 50-53).

Thus, the ALJ clearly followed the pain standard of assessment set forth in the regulations (and the Hand case) and supported his findings regarding her lack of credibility by reference to the evidence of record.  There is no merit to this claim.

b)    Treating Physicians

Plaintiff claims that the ALJ erred in not adopting the opinion of Dr. Zawahry, who found Plaintiff incapable of walking or standing at all during the day and only sitting for two hours.  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ

may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

Here, there was no basis for the severe limitations set forth in Dr. Zawahry's assessment or the conclusory statements about her total and permanent disability set forth in his letter.  Dr. Zawahry referred Plaintiff to Drs. Rao and Curry for treatment of her hepatitis C and both of these treating physicians found her condition to be resolved. Dr. Zawahry's own treatment notes do not include treatment for hepatitis C or liver swelling.  His notes also do not include any aggressive treatment for her allegations of back pain beyond muscle relaxers and mild pain medication, and such conservative treatment does not comport with a condition that would preclude entirely standing or walking during the day.   As the ALJ noted, these findings do not find support by any other examining physician or Dr. Zawahry's own treatment notes and tests, and therefore, the ALJ can properly give less weight to this physician's opinion.  Further, the ALJ did not ignore all of Plaintiff's treating physicians.  Drs. Curry and Rao were also her treating physicians, and he credited their opinions because they were supported by their treatment notes and tests.  There is no merit to this ground either.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this 2nd day of March, 2006.


\_\_\_\_\_s/A Kornblum_____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

     **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**